Council for Resolution Management Consultants v. Design One, please approach and whenever you're ready, you may proceed. This is Case 23-1289. Mr. Brown. Good morning. May it please the Court, Alex Brown on behalf of the Appellant Resolution Management Consultant, I would like to reserve three minutes of time for rebuttal, please. Granted. I want to immediately start with the issue on the forefront of the Court's mind, which is good service. The Court issued two letters to counsel. The first asked us to address what qualifies as proper service when defendant actively evades service. And then the second asked us to address service under Rule 4 in the New Jersey Mailed Rules. So the general rule in the Third Circuit for evading service is generally if a defendant is actively evading service and there's clear evidence that they received the service papers, we're not going to rely on a technical defect in the rule that was caused by a defendant. You haven't said that precedentially. There's one or two non-presidential opinions, but you're saying we should adopt that. Okay. It's a fair point. Gambone and World Entertainment were both non-presidential opinions, but Gambone specifically stated that it was well settled that that was the law. So it's an interesting dynamic, I think, where Gambone was saying it was announcing a well-established legal principle, even if it was an unpublished decision. It wasn't adopting a new principle. It was just restating what it believed was a well-established legal principle. So assuming, for the sake of argument, that that's the standard in this circuit, I believe we can show, number one, that the defendants were actively evading service, and two, a clear notice or there was clear evidence that they actually received the papers. So a couple of ways we can show they were evading service. Number one, the defendants were using one address publicly and in advertising, saying this was our principal place of business, this is our registered agent address, this is where you can serve us. Meanwhile, they were secretly operating at some unknown, undisclosed location. So when my clients tried to serve him personally on two occasions, there was no one there. And the one occasion there was someone there, the person refused to identify themselves and said, I'll give this to the defendant if and when I see him. They also made binding judicial admissions in a Tennessee state court, which were then served on my client. They said that the 201 Randolph Street address was their principal place of business. And in that case, the defendant was proceeding in his individual capacity. He also said that his individual address was also at 201 Randolph Street. And finally, he also expressly told my clients to send him legal papers at that address just weeks before they sent the service papers. Of course, he now claims it's a commercial building that he leases to tenants. But that doesn't get around the fact that this is a registered agent address, which under Tennessee law, he's required to maintain for purposes of service of process. And we submitted two cases to the court in advance of oral argument. One of those cases, Balestra v. Cloud With Me, I think, specifically touches on that issue. In that case, a company was using one address. It was out in Ireland. They tried to make personal service there. They were told this may be their registered address, but they're not actually doing business here. They tried to locate the individuals, weren't able to, and then finally served them through registered mail at that address. Lo and behold, the defendants come back and say, oh, we're not properly served because we weren't actually there. We were at some place in, I think, Iceland or something like that. And the court said, you can't avoid service by listing one address as your registered agent address and then claiming not to be present there. Second way they avoided service was that when we served them by registered mail, they had someone else sign the registered mail receipt, believing that would get them out of being served with the complaint. In that case, they claimed the person who signed was an employee of the tenant of the building. But we know that this was all by design, and we know that for a few reasons. Number one, we have sworn testimony that the mail received there is in a locked mailbox, and there's only two keys to that mailbox. One was owned by the principal of the company, and the other was held by two of his business associates. So there's no way he could have possibly gotten that mail. And we also know this was by design because he also signed for certified mail, where we sent copies of the summons and complaint, and at an entirely separate address that had nothing to do with where he worked. And then finally, we have testimony from the two individual women who worked with him that he was intentionally evading service and he was bragging about it. So we know all of this was by design. So this is Romanoff and Malone? Romanoff, yes, yes, the two. They're odd documents because they're not styled as traditional affidavits of service. Is there enough in them that we can treat it as substantial compliance? I believe it's – you're correct. I think we need to place form – well, form over substance, right? Or substance over form, sorry. They specifically state that they were the ones who retrieved the mail service that they got when they went out to unlock the mailbox and get the mail, and that they personally delivered it to Devin in his individual capacity and as an officer of the two defending companies. Now, I think those statements alone are sufficient to establish service under Rule 4 because all it says that you have to do under the rule is provide an affidavit that establishes that you complied with the rule. And it doesn't say it has to be in a specific form. And in this instance, the reason it wasn't in a specific form, as I'm sure you know, is this happened years later, and this was kind of after the fact. Let's prove he actually received a copy of the complaint. How do we do that? Let's send these affidavits as support of position. Okay. Do you agree that you bear the burden of proving validity of service, or does the evasion lower that burden or shift it or anything? Well, those are two, I think, different questions. They are different questions. Yeah. I think the evasion of service issue lowers the burden, or at least it says we're not going to rely on technical compliance with the rules where there's clear evidence that the defendant was served. Actually, now that I think about it, that is kind of in line with the shifting of the burdens, right, because the courts will say, if we have evidence that the defendant actually had notice of the lawsuit, then the burden shifts the defendant to show that they weren't served with the papers the plaintiff claims that they were served with. So now that I'm talking it out loud, they actually do sound like two similar ideas, but I think in different contexts. Yes. Okay. I do want to hear you talk through these rules. I mean, the district court focused on Rule 443, which allows service by mail to defendants' place of business. Yes. But you're not relying on that rule to argue for proper service. Are you relying on 44B or 44C? There are three different provisions, and you didn't really focus on the specific requirements of each one of those. Well, we focused on Rule 4, 4-4B. 1C, I know that's a long list, but essentially that's the rule that governs mail service on an out-of-state defendant. Now, there's three types of service you can obtain. But B1C requires showing that it's the individual's dwelling house, and there's nothing here showing that the individual defendant dwelt there. So I'm not sure if that's the right rule for you. Well, I think so. I think that's a fair point. And our position, of course, is that we actually did make good service by the hand delivery on him personally under Rule 4. So that would take care of the individual. But are you relying on B1C for the corporations? As an alternative argument, correct. And I think it's a fair point, and I think the appellees raised it in their opposition brief that if you don't find there's good service under Rule 4, if you don't rely on this other law about evading service, then maybe the mail service wouldn't have counted as good service against that individually, but it certainly would have against the defendant companies. Okay. And would it also qualify under 4.4.3, at least for the corporate? Well, it's actually interesting because I think both rules are kind of talking about the same things, right? The 4.4.4 addresses the specific things that you need to do to actually make service against an out-of-state defendant. Rule 4.4.3 discusses generally how service is made. It seems to apply in the state, and I've seen an appellate court that says it's limited to service in the state, but it seems to be more articulating a general idea that you need to do it by hand delivery or alternatively not. You do have the certified mail. You have return receipt, but do you have postal instructions to deliver to addressee only? I mean, we'll set aside whether you can expense for that because of evasion. Sure, yeah. And really briefly, if you look at the rule, because, I mean, it's an interesting question. If you look at the rule, sorry, I'm trying to bring it up right now. What it actually says with respect to the addressee only is, service may be made with a copy of the summons and complaint to the usual place of abode or a person authorized by rule of law to accept service or with postal instructions delivered to addressee only to defend his place of business or employment. So in that context, the addressee only is only when you're trying to serve an individual defendant at his place of employment instead of his place of abode. Okay, so that's not going to limit then, I guess, the person authorized. You're saying this is at the person's business. So at least for the corporations, that's enough. But we don't have evidence that's the individual's abode. Correct, correct. And that's also why you're looking at 444 instead of 433. So focusing on Rule 4, or turning you to Rule 4 of the Federal Rules of Civil Procedure, my understanding, why don't you have service of both parties under that rule? I believe we do. And that's our primary argument is we have testimony that they were personally served by hand delivery by someone who was over 18, not a party to the lawsuit, and submitted an affidavit establishing that service. And I think that's sufficient under the rule. I do want to leave some time to talk about the venue ruling here. The district court found, you know, B-1 doesn't apply, but what about B-2, the location of the events or omissions giving rise to the claim? Did it all happen in Tennessee? There's some nonpayment in Tennessee, but how about, what about the other factors, negotiation of the contract or where the work is performed, other factors like that? Yeah, that's exactly correct. And I'm running out of time, but extremely briefly. Please, please. The contract, this was actually a contract that was created by my clients in New Jersey. It was sent to Devon. There was actually two different agreements. Both of them were created by my client. They were heavily negotiated agreements because there was issues with payment before the second agreement got signed. So that was done in New Jersey. And then, of course, over 3,000 hours of work was performed in New Jersey. And that's critical here because it's that work that created the contractual entitlement to payment. And what the district court said is that the only thing that matters is where the decision not to pay was made. And the district court said that was probably made in Tennessee, so venues improper in New Jersey. And I think that's wrong on a number of, for a number of reasons. But primarily, it essentially ignored a Third Circuit precedent, which said you have to look at all these factors. And to your point, the reason these other factors are so important when you're talking about venue is because when you're proving a breach of contract claim, you have to prove contract, you have to prove that you performed that contract, and then you also have to prove breach. And it's all those things and all those acts that gave rise to this claim because there would be no right to payment for the first place if you never complied with your contractual obligations. And if you look at the – Are you saying that the 3,000 – you said there were 3,000 hours of work done in New Jersey. Mm-hmm. What – I mean, that was not on the resolution of the construction project, was it? What was it – what was in connection with? Correct. The underlying construction contract is what gave rise to a lawsuit between the defendant companies and the VA. They then hired my clients to act as expert witnesses. So there was a site visit in Tennessee that they performed, and I think there was depositions in D.C., but all the other work that they performed was in New Jersey. So with respect to that contract – What other work? In determining whether the work had been properly done and reviewing the depositions or – If you're asking me precisely what they did, I don't really know. I apologize. I have the affidavit from my clients saying that they performed 3,000 hours worth of work, and I'm sure it was divided by time and that if we took discovery, that would come out in discovery, but I don't have that information as to exactly what they did. All right. Very good. Let's hear from your friend on the other side. Thank you. May it please the Court, I'm Melinda Metter from Knoxville, Tennessee, and I'm here representing Mr. Kenneth Davin and his companies Design One and America One. Let me begin by addressing the venue issue. We're going to stand on our brief. I know you all are very interested in the default argument issues, but the district court was correct in determining that the decision not to pay was controlling in this case. The decision not to pay was made in Knoxville. All right. But doesn't our precedent in cases like Kottman Transmissions say we have to look at what's a substantial part of the events, and 3,000 hours sounds pretty substantial to me. You're not disputing that there were 3,000 plus hours worked in New Jersey, are you? Well, my client would probably dispute that in the court below when it comes around to trying this case. However, for purposes of this argument. For purposes of this argument, the allegation is not a brand new one. There was a bunch of work done in New Jersey. There was a bunch of work done. I want to point out that the contract, my client was in Knoxville. The litigation that brought RMC into this case was in Knoxville. The building that was constructed for the Veterans Administration was in Knoxville. Everything that had to do with the litigation and the construction of the building occurred in Knoxville. Right. But it looks like the district court thought that there is just a single best venue allowed. But that's not the law, right? It's wherever a substantial portion took place, and that could be more than one venue, right? Well, that's true. But let's think about this for a minute. This company, RMC, has offices all over the country. They have offices in Las Vegas. They have offices, I think, in California. My client hired RMC to do this work for its project in Knoxville. They had to come to Knoxville to actually look at that building. That was the whole purpose of it. Right. Would they have to go? Would venue be proper in Las Vegas if the work had been done in Las Vegas? But your client, at least your individual client, Mr. David, visited New Jersey a couple of times. At least he's alleged to have. And I'm not arguing that there were not minimum contacts. Right. The court below found that there were, and we accept that. Right. However, it was just a couple of visits. That doesn't mean that that is as far as venue. Just a couple of visits might not be enough, but a couple of visits plus allegedly 3,000 hours. You know, no one's saying there were 3,000 hours in Las Vegas or something, but there were 3,000 hours in New Jersey. That sounds substantial. It's a substantial amount of work. But when you put that in light of all the other factors, after all, it is really a totality of the circumstances. And all of the other circumstances occurred in Knoxville. Okay. I got your position on that. But is it a totality of the circumstances? I mean, it's a consideration where substantial work was done in one place or another without considering the totality of the circumstances. The court ruled below. Judge Kugler ruled. Well, I mean, but we're determining whether the court ruled correctly or not correctly. Right. But the court did rule based on the one factor. As the opinion reads, it was based on the one factor that the decision not to pay was made in Knoxville. And there is case law in the state of New Jersey to support that position. However, if you were to look at it from a broader perspective, my argument would be that there are still many indicia here to suggest that venue was proper in Knoxville rather than New Jersey. Okay. Calling somebody five states away from not only the building, the construction, everything that was being done to try a case in New Jersey doesn't really make logical sense. Well, whether it makes logical sense or not, I mean, aren't we bound? We are bound by presidential authority. And our presidential authority says the test for determining venue is not the defendant's contacts with a particular district, but whether the location of the events and omissions given rise to the claim. And then it says to assess whether events or omissions given rise to the claims are substantial, we look at the nature of the claim. And the nature of a claim is it's a contract dispute. So we're talking about is there a valid contract, where was the performance, where was the, you know, alleged failure to perform. And when you're looking at that, it seems to me like proven existence of a valid contract, the performance, relationship, those are potentially the damages that occurred in New Jersey. There's only one of those factors that occurred in Knoxville. The case that was relied on most heavily by the appellant in this case was Metrano. And if you look at Metrano, what you find is that virtually everything that the court wound up deciding meant the venue was proper in the state of Virginia was because the parties were there, the lawsuit underlying Metrano was in Virginia, everybody was in Virginia. That makes sense to me. And this, because everything occurred in Knoxville, except where they claim they did their work, it makes most sense for the venue to be cited in Knoxville. All right. I want to make sure that there's time to talk about service. You have never denied that your clients received actual service, actual notice. I haven't seen anything in the papers that say we didn't get the papers, we didn't know about the lawsuit, et cetera. The affidavits of Mr. Davin say very clearly that he never knew about this lawsuit. Now, I want to emphasize something here. Was it his email responses and everything? What he knew with those email responses is that there might be something out there. I know nothing, I know nothing. That counts as not knowledge. And I'm not sure that that matters. That doesn't qualify as evading service. So you're taking the position that doesn't matter. What do we do with the two women who say that they got these matters and they passed them on to him? Are we supposed to set that aside at this stage? Yes, sir. As the district court did. Because those affidavits, one woman, the woman who claimed to be a non-paid consultant to Mr. Davin, has filed six different lawsuits against him around the country. What about Ms. Malone? I get your problem with her. What about Ms. Malone? Ms. Malone worked for Ms. Romanoff. And whether or not she passed papers to Mr. Davin is not entirely clear, even from her affidavit, as I recall. How is it not entirely clear? Walk me through the affidavit. Well, I don't have the affidavit here with me.  We've both got the affidavit. Let's talk about Malone. We've got page two, paragraph seven. I recall seeing the documents attached as exhibit A. And then at the end of that on page three, after opening the mail, Ms. Romanoff retained one copy for the records, which we kept for Mr. Davin, and the other she told me to give to Mr. Davin. I personally gave Mr. Davin the documents attached here to this exhibit A. What are we supposed to do with that? She doesn't say when she received them. Nowhere in there does she tell you when she received those documents. Okay. What in our law requires the exact date to be there? If it was some time much later, then it really doesn't apply. All right. Let's assume that we credit the evidence that your client said, I know nothing, nothing, I don't want to know anything about this, I'm never going to get served. Doesn't then our substantial compliance rule kick in to say that we should be generous in reading this and not allow your client's strategy to take effect? Let's talk about strategy for a minute. Strategy. Okay. Go ahead. My client had filed a complaint against RMC in Knoxville, Tennessee, over this same set of facts and circumstances, alleging breach of contract on July 23rd of 2016. And he said these were the proper addresses. And then they tried to serve, and lo and behold, he's not there. Well, he's not there. Both the courts in Tennessee. Okay. If I may, let's keep in mind my client filed suit first. Okay. A week later, after having accepted service and knowing that this lawsuit was sitting out there and that they should file compulsory counterclaims to that suit in Knoxville, they accepted service the same day it was filed, July 23rd. So they knew on July 30th, when they filed their suit in New Jersey, that this suit already existed in Knoxville. Was there anything improper about their filing it in New Jersey as opposed to as a counterclaim? Was there anything unlawful about doing that? No. No. However, then they removed the case to state court. Now, Mr. Davin, I mean, removed it to federal court. Mr. Davin had been proceeding pro se. He filed his complaint pro se. But once this case made its way into the federal courts, he hired counsel. A well-known firm in Knoxville, Tennessee, represented Mr. Davin in the federal court case, now from the removed state court. That entry of appearance was made on October 5th. That's the same day that RMC sent out this certified letter and regular letter, allegedly, to my clients at the 201 Randolph Street address. Never once... And several other addresses too. Yes. Yes. Never once did RMC's counsel have any conversation with Mr. Davin's counsel about the fact that that lawsuit had been filed in New Jersey. Never once. I would like to think that the district court below actually looked at that and questioned, well, why wouldn't you go ahead and tell someone if you want service on them? He has now opened himself up clearly to service through his attorney. Nothing was ever said to my client. If the district court had relied on that, I would get it, except I don't think the district court relied on that recently. I don't see it in their opinion. Well, the main reason is because there was never actually any service on my client. Now, you can say... Does the district court discuss Ms. Malone's affidavit? Excuse me? Does the district court discuss Ms. Malone's affidavit? The district court did not. However, it was argued at length in the court below. Those affidavits, at least ten exhibits attached to those affidavits, my client's affidavits, and most significantly, Mr. Kirchner's affidavit on behalf of RMC, in which he produced a card that had been signed by someone named Carrie Browder and represented to the court that it had been signed by Mr. Davin, which it clearly had not been. Okay, let me ask you about the legal test here. So I mentioned to your friend on the other side that we don't have precedential authority establishing a test in this circuit, and he pointed out that Gambone, a non-presidential case, treated the rule as well settled. Is there any reason we shouldn't adopt the test of actual receipt plus clear evidence of evasion of service? Is that the right legal test? Because the arguments you're making and you're making with some force are factual arguments about whether we actually received and whether there's clear evidence of evasion. But is that the right legal test we should apply here? If you want to talk about actual notice in conjunction with evading process, there is no proof that he was evading process. I'm asking whether that's the right legal test. I agree. You're disputing the facts. Are we here just to kind of resolve whether the district court clearly erred on finding the facts? Or, I mean, is there agreement on what the right legal test is? Because I'm not sure the district court actually applied this legal test. I don't know. Okay. I don't know. Fair. I have been very focused because of the court's questions to us on the facts as they existed. The standard might well be what you've outlined. But even if it is, my client doesn't meet that standard. Okay. And here's why. Let's say 201 Randolph Street is the way they got that is because he actually mentioned that address in his underlying complaint in the Tennessee court case. Now, the fact that that is the principal place of business does not necessarily mean that somebody is there at all times. We have a process server in Tennessee who went out to that location over about a 36-hour period. The first time she went, it was locked up. There was no one there, period. The second time she went, there was one person in the building who she didn't try to serve. She says she gave him a notice that they were looking for presumably Mr. Davin. We don't know what the notice was, but she does not say she delivered the summons and complaint to this person who was in the building. And that person told her, Mr. Davin does not come here every day, and I have been told he's recently sold the building. On the third attempt, she went back. There was no one in the building. Now, that doesn't mean he was evading process. He didn't know they were coming there. He had filed his own lawsuit. I'm sure he was expecting them to answer his lawsuit. He wasn't expecting to be sued in New Jersey after he had filed his suit. He wasn't there. The process server didn't go out and look for his residence. Presumably, RMC didn't send him out to look for his residence. They only had this address that they were trying to use for service. New Jersey contains a requirement that there be a diligent effort to locate somebody. This doesn't qualify as a diligent effort. This is simply somebody going to one address that they had on file looking for him. He wasn't there. That is not evading. In talking about the evading cases, and this is true regardless of the cases that RMC submitted last week, Balestra and the other one, both of those are cases in which a process server goes out and is actively looking for someone who is hiding from them. The process server sees that there's someone in the house. The process server has to chase someone down. The process server pounds on the door, and he hears the door lock on the other side, and the garage door close. Those are indications that someone is evading process. That's not happened here. Then we have service by mail. The one thing that Judge Kugler comes back to that I really want to emphasize for everyone is that this section of the New Jersey rules that talks about optional mail service. Tennessee has a very similar rule. If actual notice sufficed, we wouldn't have these rules. If it were enough to simply call somebody and say, hey, we've got a complaint, you're served, or if you handed them the complaint and you were not authorized to hand them that complaint, that's not good service. Those rules exist for a reason, and it is to ensure that the parties have actually received and know what's happening. Normally default comes down to situations where someone has actually received service, but they choose not to answer, or they run and hide, or they leave the country. Default gets entered in those cases, not where there is a dispute over whether there was actually service. But the other thing I wanted to point out about that is that... Why don't you wrap up? All right. I want to conclude with this. This notion that there must be service, proof that there has been service by mail, and that applies to both New Jersey law and Tennessee law. I want the court to be aware of Zacharias v. Whatman, a case in which Judge Sylvia Pressler, who is a well-known New Jersey jurist and a recognized authority on the New Jersey court rules, actually held that a plaintiff had complied with the optional mail service in a case in which one dependent was actually from Massachusetts. It applies to situations, too. The Sobel case versus World Entertainment that we cite, that is an optional service by mail provision that was held to apply. The court found that it had no jurisdiction. Thank you, Ms. Mander. We have the citations. All right. Thank you, Your Honor. I would say one other thing, if I may. Thank you. Mr. Brown, for your rebuttal, please. I'd like to hear you respond. You may have some other things, but just specifically, your friend argues with some force the facts here, that we shouldn't put weight on the Malone affidavit and that this is not a classic evading service case. It's not like a process server was actively looking for someone who was running away and hiding. So focus on that factual argument for a moment. How is this case at all like a balestra or something? Right. And to her point, it's not exactly the same thing, right, where this wasn't a case where we were banging on the door and he was hiding in it and refused to answer the door to accept service. I think this was a more multi-parted scheme to ensure that he would evade service. And, in fact, we have testimonial evidence that he was admitting that fact to the two women that worked with him. What are the best citations for that or best things we should look at? And that's why I cited the balestra case. I understand it's an unpublished district of New Jersey case, but I thought that stood very strongly for the proposition that you can't avoid service just by listing one address as your registered agent address, which, by the way, you're required to maintain under Tennessee law. The whole point of having a registered address is so you can be personally served there. And in that case, that's exactly what the court pointed out. Of course, it wasn't Tennessee law, but they said that you can't avoid service by saying, I'm not at my registered address. We're not bound by the case. Should we read the principle as narrowly as Ms. Medder does, that it's, you know, you've got a process server and there's someone hiding behind the curtains and you can see that? Because you don't quite have that here. So why should we read it more expansively as whenever someone says they're never going to get me with service or something? Right. Or they've got multiple addresses in your situation. Right. And I think what you have here in the general concept behind the law is that where a defendant's actively evading service but received actual notice of the case but is taking active measures to ensure that the plaintiff can't comply with the law. So active measures should include addresses other than the one that's listed as your registered address. Absolutely. Telling people I'm not going to take it, you know, responding to these e-mails not like, oh, let me know what's happening. But so those should suffice. Absolutely. Or in this case, sending letters to my client, specifically directing them to send mail there, knowing that, you know, you're trying to avoid service at that address. Okay. And a couple of other just – I'm sorry, what was the second issue you wanted me to address? That was it. Like, Balestra and the, you know, what is it that makes this case like that with evasion? So you've given me some factual things that you think ought to suffice. We don't have precedent. We're probably going to need to make precedent here on this. But you're suggesting that our reading should not be narrowed down to the process certification suggesting that the misdirecting people on addresses and having multiple addresses and telling people they're never going to get me and responding to e-mails this way collectively suffice. Correct. And just to clarify a couple of factual points, the other Tennessee case was voluntarily dismissed after the defendant essentially refused to engage in any sort of discovery and about a couple weeks before the dispositive motion deadline. And, in fact, we did assert. The defendant meaning? The defendant in our case. Oh, the plaintiff in that case. Yes, correct. You can't voluntarily dismiss the plaintiff. I mean defendant. And, in fact, we did file a counterclaim. And in that counterclaim, which we also made an affirmative defense as well, we specifically referenced the New Jersey action. We also referenced the New Jersey action in the second paragraph of our motion to dismiss, in the memorandum of law in our motion to dismiss, arguing that the case against the defendant should be dismissed so we can proceed in the New Jersey action and prosecute it over there. So this idea that we didn't tell them is just flatly incorrect. And then lastly, the final point I want to make, and I'm out of time and I apologize, is that there's also clear evidence that aside from the affidavits, aside from everything else, there's clear evidence that Davin was actually receiving mail at this address, and we know that because he admitted it in writing when he responded to a prior letter that counsel had written him just weeks before. And on top of that, I referenced the Tennessee action. The notice of removal was served on defendants at that Tennessee address. The motion to dismiss was served on them at that Tennessee address. And the reason it was served on them there is because they were proceeding pro se initially. After they received the documents, they got counsel to enter his appearance in the federal action to contest the motion to dismiss, which they obviously couldn't have done if they didn't receive the documents. All right. We thank both counsel for their excellent and helpful briefing and arguments.